[Civ. No. 16824. First Dist., Div. One. Aug. 22, 1956.]

PACIFIC COAST BUILDERS (a Copartnership) et al., Appellants, v. THE ANTIOCH LIVE OAK UNIFIED SCHOOL DISTRICT et al., Respondents.

John G. Evans for Appellants.

Francis W. Collins, District Attorney (Contra Costa), and Charles L. Hemmings, Deputy District Attorney, for Respondents.

AGEE, J. pro tem.*—Plaintiffs appeal from a judgment in favor of defendants. On February 25, 1952, the parties entered into a written contract under which plaintiffs agreed to construct six school buildings for $644,250. Defendants have withheld payment in the amounts of $930.33 for certain inspection and retest costs and $6,975 as liquidated damages for late completion of four of the buildings. The contract made provision for such liquidated damages under certain conditions. The delay in completion was caused by the redoing of certain work, hereafter described. Defendants contend that such additional work was necessary in order to comply with the contract specifications. Plaintiffs claim that this work, as originally done, did comply with the contract and that the redoing of the work was an extra, the reasonable cost of which was $15,726.77. Plaintiffs seek recovery of this amount plus the withholdings. With the exception of one minor item, involving the cost of concrete inspection, the entire dispute hinges upon whether plaintiffs were required to redo the work in question as a part of the contract.

After the concrete foundations had been poured and the wooden forms removed, the spaces between the sides of the trenches and the foundations were required to be backfilled with soil. A general section (205) of the specifications, labeled *"Excavating, Filling and Backfilling,"* provided for the general method and manner of backfilling, as follows: "Backfill around all foundations using clean, finely divided soil of such nature that will compact thoroughly. . . . Deposit fill in layers not exceeding 8", compacting each layer thoroughly by tamping or other approved mechanical means." The next section (206) is labeled *"Compaction of Soil Under Slabs."* This section imposes additional requirements "At all areas which are to receive concrete slabs on the ground." The requirement involved herein is as follows: "(d) All excavated material, and bottom of excavation (undisturbed ground) shall be compacted to a relative compaction of at least 95%." The contract called for the laying of concrete slab floors over the entire area adjacent to the interior sides of the foundations.

Following completion of the original backfilling in this area, tests were made which showed that the required degree of compaction had not been achieved. Defendants demanded that the work be redone and plaintiffs did so under protest.

*Assigned by Chairman of Judicial Council.

The trial court found that the specifications were "plain, clear and unambiguous" in respect to compacting the soil to be replaced in the areas adjacent to the interior sides of the foundations and that section 206 (d) must be complied with in such areas. This interpretation is not only reasonable but the only one that could be made. The purpose of having a proper density of soil upon which to lay concrete slab floors is obvious.

The trial court also found as follows: "that the architect for the school district and the structural engineer, employed by him, found and determined in good faith . . . that plaintiffs were required . . . to compact replaced soil adjacent to the interior portion of the foundations in accordance with the provisions of Sub-section (d) of Section 206 of the Specifications." The contract provided as follows: "that each and every difference of opinion respecting the same [plans, drawings and specifications] shall be finally determined by the architects of said first party [school district]." Plaintiffs in their opening brief state: "While it is true that the Courts will uphold the decision of the Architect pursuant to such a provision if it is fairly made, but it will not be held binding where it is arbitrarily made, or where it is based upon fraud or mistake, or where it arises from an obvious misinterpretation of the contract of the parties." There is nothing in the record to indicate any such invalidity in the decision of the architect. Moreover, as we have said, the trial court made its own independent interpretation of the contract provisions in question.

Plaintiffs contend that the defendants should have caused soil compaction tests to be taken at progressive stages of the backfilling and thereupon advised plaintiffs if the required 95 per cent was not being reached. There is no such requirement in the contract. The specifications (007b) provide that materials or work required to be tested shall be tested under the supervision of and as directed by the architect. The test in question was directed by the architect to be made at the completion of the backfilling.

Plaintiffs also call attention to the following provision in the contract: "The Inspector shall exercise all reasonable diligence in the discovery of, and report to the Contractor as the work progresses, the materials and labor which are not satisfactory to the said Inspector so as to avoid unnecessary trouble or cost to the Contractor in making good defective work or parts." The inspector testified that in his opinion

the backfilling was being properly done. He also testified that he made no compaction tests at the site and did not have either the training or equipment to do so. He expressed his position as follows: "I was forced to take the attitude more or less of 'wait and see' because I understood that no tests were to be made until the job was completed . . . I could do no more than wait until the job was completed, and the test showed what the compaction actually was." The test to be made was described in the specifications as follows: "Relative compaction shall be determined by the 'Impact or Field Method Compaction Test' as specified in Section 6, Article (g) of 'Standard Specifications—State of California, Department of Public Works, Division of Highways, January, 1949.' " Plaintiffs do not contend that they thought that the inspector was making such tests. The mere fact that the inspector thought that the backfilling was being done properly does not estop defendants from requiring that the compaction meet the test specified. The trial court found as follows: "The day to day inspection performed by the various inspectors employed by the school district did not constitute approval or ratification of the work improperly done by plaintiffs." This finding is amply supported by the record.

 In addition to the amount withheld as liquidated damages for delay in completion, defendants also withheld $930.33 for certain inspection and retest costs. Three items make up this amount, $629.94 for the cost of inspecting concrete at the batch plant, $289.89 for the cost of retests of soil compaction in the area of the retrenching, rebackfilling and recompacting, and $10.50 for the cost of steel retests. This latter item is not in dispute. The specifications provide: "All costs of tests and inspections . . . shall be borne by the Owner, subject to the provisions of Section 30, Rules and Regulations of the State Division of Architecture." The section cited provides: "The *school board* with the advice of its architect or structural engineer shall select the testing laboratory and shall pay for all tests. When in the opinion of the architect or structural engineer, *additional tests or inspection are required because of the manner in which the contractor executed his work,* such tests and inspection shall be paid for by the *school board* but will be deducted from the contract price." (Emphasis added.) The $289.89 item is therefore properly chargeable against plaintiffs because, as we have held, the soil compaction retest was made necessary "because of the manner in which the

contractor executed his [original] work." Under the plain terms of the contract, however, all original tests are to be paid for by defendants and the item of $629.94 for inspecting the concrete at the mixing plant is not chargeable against plaintiffs. Defendants call attention to a bulletin issued by the Department of Public Works, Division of Architecture, which allows the certification by a public weighmaster to be accepted in lieu of continuous inspection at the mixing plant. This procedure was not followed. Defendants' argument seems to be that plaintiffs should have proposed such procedure and thus have eliminated the cost of inspection at the plant. There was no obligation upon plaintiffs to do so and, inasmuch as the contract provided for original inspection costs to be paid by defendants, no reason for doing so. The architect's opinion that plaintiffs should bear this charge is based upon an obvious misinterpretation of the contract and therefore is reviewable by the courts. (9 Am.Jur., 1955 (Supp.), p. 10, § 37.1.)

The judgment is reversed and the trial court is instructed to render judgment in favor of plaintiffs in the amount of $629.94, together with interest thereon as provided by law. The parties are to bear their own respective costs on appeal.

Bray, Acting P. J., Wood, J. (Fred B.), J., concurred.

A petition for a rehearing was denied September 21, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 17, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.